THE MODERN WOODMAN OF AMERICA v. F. S. HESTER, *as Guardian, etc.*

No. 12.873.  (71 Pac. 279.)

SYLLABUS BY THE COURT.

| 66 | 129 |
| p66 | 764 |
| 66 | 129 |
| .e70 | 94 |
| 66 | 129 |
| d82 | 352 |

1. MINOR CHILDREN—*Domicile.*  After the death of the father the domicile of the mother determines the domicile of minor children.

2. ———— *Actual Removal Unnecessary.*  If, at the time of the father's death, minor children should be in Kansas, and the mother should be in Missouri, the latter state thereupon becoming her domicile, no actual removal of the childeren would be necessary to establish their domicile with that of the mother in Missouri.

3. ———— *Jurisdiction of Probate Court.*  The probate court of their domicile has jurisdiction to appoint a guardian for minor children, even though they may not be within the state at the time, and the probate court of another state, where they may be sojourning merely, has no such jurisdiction.

4. ———— *Written Request of Parent of No Effect.*  A written request by the father of minor children that a designated person be appointed their guardian has no effect, after his death, to change their domicile, or to empower any probate court, foreign to their domicile, to appoint a guardian for them.

5. ———— *Legal Situs of Beneficiary Certificate.*  A beneficiary certificate issued by a fraternal beneficiary society, suable in Missouri, in favor of minor children domiciled in Missouri, has its legal situs at their domicile, and is an asset in the hands of a

9—66 KAN.

guardian appointed there, and the presence of the paper in
another state does not authorize the appointment of a guardian
for the minors in such other state.

6. ———— *Collateral Attack on Jurisdiction.* The judgment of
a probate court appointing a guardian, void for want of jurisdic-
tion, may be attacked collaterally in an action brought by a per-
son claiming under such appointment.

Error from Douglas district court; C. A. SMART,
judge. Opinion filed January 10, 1903. Reversed.

STATEMENT.

ON August 30, 1898, the Modern Woodmen of Amer-
ica, a fraternal beneficiary society, incorporated under
the laws of the state of Illinois and doing business in
the states of Kansas and Missouri, issued to J. A. Ke-
neaster a beneficiary certificate payable at his death
to his children, Bessie, Fannie, and Harriet, all under
the age of fourteen years. Keneaster was an express
messenger, running regularly from Kansas City, Mo.,
to Arkansas City, Kan. Eda May Keneaster was his
wife and the mother of his children, and all members
of the family resided in Kansas City, Mo. About
January, 1899, the husband and wife commenced to
live apart, and in June following the children were
taken to their grandparents, in Lawrence, Kan. Kene-
aster contributed to their support there, and staid
with them from time to time as his business per-
mitted. On December 9, 1899, he executed and de-
livered to Frank S. Hester, a resident of Lawrence,
the following paper, with the beneficiary certificate
therein named attached :

"LAWRENCE, KAN., Dec. 9, 1899.

"It is my wish that the guardian for the benefi-
ciaries named in the benefit certificate No. 175388,
M. W. of A., to which this is attached, shall be Frank
S. Hester, and that no bond be required of him.

JOHN A. KENEASTER."

Modern Woodmen v. Hester.

Soon after Keneaster went to a hospital in Kansas City, Mo., where he remained until the latter part of December, during which time he appears to have been visited almost daily by his wife. Hoping to find respite from a fatal pulmonary affliction, he went to New Mexico, but died there February 17, 1900.

On February 21, 1900, Hester applied to the probate court of Douglas county, Kansas, for letters of guardianship over the persons and estates of the children named, alleging that they possessed property in this state which might be lost, destroyed or diminished in value, and that the minors were in great need of some suitable person to take charge of, care for, and protect them, in a legal manner. He attached to his application the request for his appointment which he had received from Keneaster and also a request to the same effect from the children's grandparents. Mrs. Keneaster was present at the hearing in person and was assisted by an attorney, and objected to the appointment of Hester, whereupon the hearing of his application was continued until March 2, when it was again continued to March 10, 1900. On February 23, 1900, Mrs. Keneaster, upon her own application, was duly appointed guardian of the persons and estates of her children by the probate court of Jackson county, Missouri, and on the same day qualified as such. On March 10, 1900, the probate court of Douglas county found that, at the time of filing Hester's application, Mrs. Keneaster was a resident of the state of Missouri; that the minors were domiciled in the city of Lawrence, Douglas county, and were residents of such county; that the court had jurisdiction over the persons and estates of the minors, and that it was proper to appoint Hester guardian instead of the mother. Whereupon he was appointed guardian of both the persons and the

estates' of the children, and at once qualified as such.
On March 15, 1900, Mrs. Keneaster obtained posses-
sion of two of the children and removed them to her
home.    Each guardian made sufficient proof of loss
under the beneficiary certificate to the society au-
thorities.

On March 28, Hester, as guardian, brought suit
against the Modern Woodmen of America in the dis-
trict court of Douglas county to recover judgment on
the beneficiary certificate which had, at all times
since its delivery to him by Keneaster, remained in
his possession.    On April 21, 1900, Mrs. Keneaster,
as guardian, brought suit against the Modern Wood-
men of America in the circuit court of Jackson county,
Missouri, to recover judgment on the same certificate.
The Modern Woodmen of America answered in the
suit in Missouri that an action was already pending
against it in Kansas involving the same subject-matter.
The Missouri court deemed the answer insufficient,
and on June 22, 1900, rendered judgment for the full
amount of the certificate, which, after its motion for
a new trial had been overruled, and on June 25, the
defendant paid in full.    During this time the Kansas
suit had not been pressed, and on December 18, 1900,
the society filed therein an amended and supplemental
answer containing allegations showing the jurisdiction
of the probate court of Jackson county, Missouri, and
its appointment of Mrs. Keneaster as guardian, set-
ting up all the proceedings in the suit on the benefi-
ciary certificate in Missouri, and the payment of the
judgment rendered against it there, and prayed to be
dismissed, with its costs.    The district court of Douglas
county, after a trial in which the jurisdiction of the
respective probate courts was fully investigated, ren-
dered judgment against the society for the full

amount of the beneficiary certificate, to reverse which judgment this proceeding in error was commenced.

*J. G. Johnson*, and *David Overmyer*, for plaintiff in error.

*John Q. A. Norton*, and *F. M. McHale*, for defendant in error.

The opinion of the court was delivered by

BURCH, J. : Before their separation the husband and wife were domiciled in Missouri.   Under the evidence, it is doubtful if the husband ever changed his domicile to Kansas.   If he did so, her domicile changed with his, unless he deserted her under such exceptional circumstances as to authorize her to establish a domicile of her own.   In that event her domicile continued to be in Missouri.   (*Town of Watertown v. Graves*, 50 C. C. A. 172, 112 Fed. 183, 56 L. R. A. 865, and cases cited in the opinion.)   If, however, the domicile of the wife became that of her husband in Kansas, upon his death she had the right to change it at will.   Had she been in Kansas, her abandonment of domicile in this state and the acquisition of another in Missouri could have been accomplished by removing to Missouri and establishing her abode there.   Being in Missouri at the time of his death, all that was necessary on her part was an intention to remain there permanently.   Such is conceded to have been her purpose, and it must follow that at the time of the respective probate court proceedings in Kansas and Missouri she was domiciled in Missouri.

During his lifetime the domicile of the father established the domicile of his children.   Had they resided apart from him their domicile would not have been changed, and could not have been changed, from his

own, except for faithlessness to the parental relation under such circumstances as to indicate a total renunciation of his duty and authority. Upon the death of the father the domicile of the mother fixed that of the children. The children themselves could not, in the first instance, adopt Douglas county as their place of habitation, and could not form or possess any individual intention of returning there when absent. Nor could they have any intention of remaining there permanently. After their father's death neither their grandparents nor Hester could do any of these things for them. Such authority, however, did vest in their mother. No actual transfer of the persons of the children was necessary to accomplish a change, and the legal domicile of the child afterward withheld from the mother was as much in Missouri as was that of the two she removed there. It is the law and policy of this state to give to mother-right the same dignity, respect and protection that is accorded to father-right, and, whether the facts disclose a continuation of the mother's domicile in Missouri, or a change of such domicile from Kansas to Missouri, she had the right to establish, and did establish, the domicile of her children in Missouri. This being true, the probate court of Jackson county, Missouri, alone had jurisdiction to appoint a guardian for the children.

In *Lacy v. Williams*, 27 Mo. 280, 282, it was said:

"The county court of Polk county had no authority to appoint a curator for children who were not residents of the county. The order of appointment was void and may be treated as a nullity in a collateral proceeding. Regularly, the domicile of the parents is that of their children, and whilst the mother was a resident of Cedar county, a curator for her children could not be appointed by the county court of Polk

county.   This is the only safe rule, and the only one that will prevent confusion and conflict in the administration of the estates of minors.''

In *DeJarnett v. Harper*, 45 Mo. App. 415, the syllabus reads as follows :

''The jurisdiction to appoint a guardian for a minor rests alone with the probate court at the county where the minor has his domicile ; and primarily the domicile of the parents, or the survivor of them, is the domicile of the minor child.

''The fact that the father in his lifetime gave the custody of his child into the keeping of another person being in a different county can have no effect beyond the period of the father's life ; and, at his death, the mother was the natural guardian and entitled to the custody of the child, and was bound for its support and maintenance, and this right of the surviving mother was inalienable by any parol agreement or contract of the father, which was revocable during the lifetime of the father and stood revoked at his death.   Besides, the minor living with such person in such different county under such agreement of the father did not affect its domicile, which continued to be that of the parent.''

Likewise in *Jenkins v. Clark*, 71 Iowa, 552, 555, 32 N. W. 504, the opinion says :

''Now, the domicile of a child is to be determined by the domicile of the parent ; and, when a domicile is once fixed, it remains until another is lawfully acquired.   Schouler, Dom. Rel. § 230.   If the parent change his own domicile, that of the minor child is thereby changed.   The domicile of May Jenkins at the time of the death of her parents was in Audubon county.   They had done nothing which in law could have the effect of changing it.   Mrs. Clark could not change it, for she bore no legal relation to the child.   True, she was requested by the mother, by the will, to raise and care for her, and had taken charge of her in obedience to that request.   But she was under no

legal obligation to do that; nor could she have been compelled to continue to care for her for a single day, but might have terminated her relation to her at pleasure. The child could not change its own domicile, for it was 'not *sui juris.* The domicile of the child, then, remained at Audubon county, notwithstanding the fact that she was personally in another jurisdiction, and the circuit court of that county had jurisdiction of the guardianship of her person.''

In some states the residence of children within the jurisdiction is said to be sufficient to authorize the appointment of a guardian for them, and in others *statutes relating to the subject are held to confer such power.* In this state the words ''residence'' and ''domicile'' are equivalents in the law (*Hart v. Horn,* 4 Kan. 232; Gen. Stat. 1901, § 7342), and temporary presence in the state, without the requisite intention to remain, is not legal residence. The statutes of Kansas do not in terms provide for the appointment of guardians over infants merely sojourning here, and without such warrant the probate courts of the respective counties cannot rightfully undertake to do so. In Woerner on Guardianship, section 26, citing Woerner on Administrators, section 142, the better rule is stated, as follows :

''Most of the statutes condition the exercise of the power to appoint guardians upon the residence of the infant within the county or district over which the territorial jurisdiction of the court extends. Of course, an appointment in disregard of such condition is void, and may be treated as a nullity in a collateral proceeding, and this is so whether the statute expressly negatives the power to appoint for a non-resident infant of such county or not, unless a warrant can be found in the statute itself which confers the jurisdiction.''

It would be most disastrous to the intercourse of

states if the children of one of them temporarily within the boundaries of another were there exposed to seizure and subjection to probate surveillance, and the resulting conflicts of authority would be destructive of the highest interests, not merely of the individuals immediately concerned, but of society in general as well.   The power of courts in other proceedings to award the custody of children according to their highest welfare is not here involved, and the principles applicable to such cases are not determinative of the questions now under consideration.   Under some circumstances a court may inquire into the fitness of a person, whether parent or guardian, to obtain or hold the custody of children, but the jurisdiction to select and appoint guardians is not thereby changed or impaired.

The written request of the father that a given person be appointed guardian for his children was of no legal effect.   As many courts have said, children are not chattels, nor are they the subject of ordinary gift or contract.   During the father's lifetime the mother's authority was coequal with that of his own.   He could not by will have created a testamentary guardianship, because she survived him, and no other method of projecting his personal desires beyond the span of his own existence is sanctioned by the law.

The fact that the beneficiary certificate sued on was in Douglas county was not of itself sufficient to empower the probate court to appoint a guardian for the infants there.   The instrument created a simple contract debt.   The substantial property right adhered to the debt rather than to the instrument evidencing it, and in legal estimation its *situs* followed the domicile of the owner.   In *Moore, Adm'x. v. Jordan,* 36 Kan. 271, 13 Pac. 337, 59 Am. Rep. 550, it was held

that a, note and mortgage belonging to a man dying in Colorado with the instruments in his possession there were not assets in the hands of his widow as administratrix appointed in Colorado, but belonged to an administrator appointed at the decedent's domicile in Illinois, and the doctrine was illustrated by numerous decisions cited in the opinion. Upon the same principle, if the beneficiary certificate had its *situs* at the domicile of the owners in Missouri, it could not have been assets in the hands of a guardian appointed in Kansas, and hence could not have been the foundation of any order appointing such guardian.

The cases of *N. E. Mutual Life Ins. Co. v. Woodworth*, 111 U. S. 138, 4 Sup. Ct. 364, 28 L. Ed. 379; *New York Life Ins. Co. v. Smith*, 14 C. C. A. 635, 67 Fed. 694; *Sulz v. M. R. F. L. Association*, 145 N. Y. 563, 40 N. E. 242, 28 L. R. A. 379, cited by defendant in error, do not aid his position. In none of these cases did it appear that the possession of the policy was made the sole foundation for the grant of letters of administration, nor was the jurisdiction of the probate court, or the right of the administrator to sue, assailed on that ground.

It appears, therefore, that the appointment of a guardian by the probate court of Douglas county was wholly void, while the appointment by the probate court of Jackson county, Missouri, was wholly valid, and, under authority of *Perry, Adm'r, v. St. J. & W. Rld. Co.*, 29 Kan. 420, the question of jurisdiction could be investigated in the action on the beneficiary certificate brought by the party claiming the right to sue by virtue of his appointment in Kansas.

Besides all this, even if the two courts had concurrent authority to appoint separate guardians in their respective jurisdictions, the payment of the judgment

recovered by the domiciliary guardian would constitute full satisfaction of the cause of action, and could be pleaded against the further prosecution of the suit in Kansas ; so that in any view the judgment of the district court was erroneous.

It is therefore reversed, with direction to enter judgment for costs in favor of the defendant below.

All the Justices concurring.

SYLLABUS BY THE COURT.

