No. 22,156.

MARIA CHUMOS (Revived in the name of A. D. CHACONA, as Executor, etc., *Appellant*), v. CONSTANTINE G. CHUMOS, *Appellee.*

SYLLABUS BY THE COURT.

1. DIVORCE—*Alimony—Installments Due after Wife's Death Payable to Children Whose Custody Was Awarded Her—Interest of Executor of Wife's Will*—In an action for divorce, alimony was awarded the wife for the support of herself and children given to her custody, in a certain sum payable in monthly payments of a specified amount. The decree further provided that if the wife should die before the entire sum was paid the remainder should acrue to and be paid to the children. *Held*, the executor of the wife's will has no interest in payments falling due after her death, and has no standing to contest an order relieving the husband, who was given custody and appointed guardian of the children, from making the payments to the children.

2. SAME—*Adjudication against Husband of Title in Wife—Not Binding on Husband Subsequently Claiming as Guardian for Children.* In the divorce action it was adjudged that the wife owned a certain certificate of deposit, which the husband had used as collateral security for the payment of a debt. *Held*, the adjudication did not bind the husband, in his capacity of guardian for the children.

3. SAME—*Death of Wife in Foreign State—Domicile of Minor Children —Jurisdiction to Appoint Guardian.* On the death of the wife in a foreign state, natural guardianship of a child which had been in her custody devolved on the husband; his domicile became the child's domicile; the probate court of his domicile had jurisdiction to appoint him guardian, although the child was absent from the state; the wife not being surviving parent, designation of a different guardian in her will was void; and the district court had authority to adjudicate the question of guardianship, in the proceeding to try title to the certificate.

4. SAME—*Executor of Wife's Will—No Interest in Future Custody of Minor Children.* The executor of the wife's will has no standing to contest an order formally transferring custody of the children to the husband, following the wife's death.

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge. Opinion filed October 11, 1919. Affirmed.

*Joseph G. Waters,* and *John C. Waters,* both of Topeka, for the appellant.

*Leonard S. Ferry,* and *Thomas F. Doran,* both of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal was taken from an order of the district court of Shawnee county, modifying the provision relating to alimony contained in a divorce decree.

The suit was that of Maria Chumos against Constantine Chumos. The plaintiff prevailed, and was granted a divorce on April 18, 1910. There were three children, George, aged four, Nicholas, aged two, and a daughter, Panagiota, aged one year. Custody of the children was given the plaintiff, with right reserved to the defendant to see them once a week. The decree further provided as follows:

"It is further considered, ordered, adjudged and decreed by the court that if said plaintiff shall at any time desire to leave the jurisdiction of this court, she may take the youngest child with her, and shall deliver the other two children, to-wit, George and Nicholas, to the defendant, to be cared for by him until such time as said plaintiff shall return to the jurisdiction of the court.

.    .    .    .    .    .    .    .    .    .    .    .    .

"And it is further decreed that the court takes to itself the further and future disposition of the children, and to alter the custody thereof, whenever to the court it may seem advisable and proper."

The plaintiff was awarded alimony for the support of herself and the children, in the sum of $12,000, payable in monthly payments of $75, beginning May 1, 1910. There was introduced in evidence at the trial a certificate of deposit issued by a bank in Greece, for 11,000 drachmas, worth about $2,015. On the evidence before it, the court found the certificate was the property of the plaintiff. The certificate had been used as collateral security for an obligation of the defendant, and the decree provided that when it was released, and was delivered to the clerk of the court for the plaintiff, the defendant should be credited with its value. The decree further provided as follows:

"The court further finds, that in case the care, custody, control, and maintenance of said children, or either of them, shall be hereafter changed by order of this court from the plaintiff to the defendant, then the court shall make such reduction in the amount awarded the plaintiff, as alimony and for the support and maintenance of said children, as the court shall deem right and proper.

. . . . . . . . . . . . .

"The court takes to itself the right to deduct from the sum of money awarded the plaintiff as alimony, for the support of herself and the care and maintenance of her children, such a sum as it may deem equitable and just, in case the custody of said children or either of them be changed from the plaintiff to the defendant; and in case the said plaintiff shall die, or marry again, before the entire sum awarded her as alimony has been paid, the same shall accrue to and be paid to said children at the times herein provided."

Soon after the decree was entered the plaintiff went to Pennsylvania, taking the infant daughter with her, and leaving the two boys with their father. In July, 1910, Nicholas died. His father paid the expenses of his illness, funeral, and burial, in the sum of $250. On January 6, 1912, the plaintiff died in Pennsylvania. She left a will giving three-fourths of her property to her daughter, and one-fourth to her brother. She also undertook to appoint a guardian for her daughter. A. D. Chacona, the present appellant, was named executor of the will, which was duly probated in Venango county, Pennsylvania. On February 14, 1912, the father was appointed guardian of the children, George and Panagiota, by the probate court of Shawnee county, the domicile of both parents before divorce, and of the father thereafter. In March, 1912, Panagiota was taken to Greece by Angeline Lambros, the person named as

· guardian in the will of Maria Chumos, and has been kept there
ever since. Angeline Lambros acted without the consent and
over the protest of the child's father and guardian. In Octo- ·
ber, 1912, the court entered an order formally changing the
custody of the living children from Maria Chumos to their
father. In January, 1915, as the result of proceedings initiated
in 1912, the action was revived in the name of A. D. Chacona,
as executor of the will of Maria Chumos, deceased. (See
*Chumos v. Chumos,* 93 Kan. 33, 143 Pac. 420.) At the death
of the plaintiff the defendant was in arrears in respect to
monthly payments in the sum of $475, $400 of which was paid
in October, 1912. Until the present proceedings were insti-
tuted, the defendant had not paid the costs of the action,
amounting to $171.45.

Constantine Chumos, as defendant in the action, filed a mo-
tion for modification of the decree. After a hearing, the mo-
tion was allowed, and the decree was modified accordingly, as
follows: The defendant was required to pay to Chacona as
executor the sum of $246.45, composed of the balance of $75
due at the death of Maria Chumos, and the costs. On payment
of that sum, he was relieved from further obligation to make
the monthly payments specified in the original decree. Con-
stantine Chumos, as guardian of the children, George and Pan-
agiota, filed a motion alleging that his wards were owners of
the certificate of deposit which has been mentioned, and ask-
ing that the decree be modified in accordance with the fact.
At the hearing, title to the certificate of deposit was estab-
lished in the children, and the court ordered the instrument de-
livered to the guardian for their benefit.

The argument of the executor in reference to the propriety
of the order discontinuing monthly payments of $75 touches,
first, the authority of the court to make division of property
and to award alimony; second, the effect of such an order; and
third, the power to change such an order, once made.

The court may restore to the wife property belonging to her,
may divide property, may give the wife a share of her hus-
band's property, may give property in fee, and may give money,
the same as real or personal property, outright, or condition-
ally, all as may appear to be equitable and just. None of these

principles is in doubt, and it is of more interest to observe how the court exercised its conceded power.

What the court did was to give Maria Chumos $10,000, plus the value of the certificate of deposit, which Constantine had hypothecated as security. Constantine could get credit for the value of the certificate, $2,015, by turning it in. He was not obliged to do so, but if he did not do so he was required to pay the full sum of $12,000, in monthly installments of $75. These are the heavy black lines of the decree which the astigmatic eye of the executor sees with great vividness, all else being blurred and indistinct. Scrutinized by normal vision, the award and its conditions and limitations all look alike, and are equally clear. The award was not made for the benefit of Maria alone. She was given the custody, care and maintenance of three small children, and the award was stated to be for the support of herself and the children. Change in custody of the children, or some of them, was foreseen, and power was reserved to deal with the award accordingly. Besides that, it was expressly provided that, should Maria die or marry, the portion of the award payable thereafter should accrue, not to her estate or her devisees, but to the children. All her interest in the award terminated absolutely with her death. Whether or not the award was equitable and just is not now material. The subject was one over which the court had full jurisdiction, as the numerous authorities industriously collated by counsel indicate. The award expressed the conclusion of the court. Maria was satisfied, and did not appeal or otherwise complain. She became bound by the award of monthly payments of a specified sum, subject to modification and ceasing altogether at her death, and her executor is bound to the same extent, that is, conclusively.

With reference to the effect of an award of alimony, the brief of the executor asserts that whatever is given the wife is hers absolutely and unconditionally, and not temporarily; the right and title of the husband to the portion given is cut off; there is no reverter; the judgment is final, and disposes of the entire subject; the wife may spend, sell, or trade off the award, as she may see fit; it is hers while she lives, and it belongs to her estate when she is dead. The court will agree with the executor whenever he presents a case of an award of money or property to the wife, outright, unconditional, and without limitation.

We have here a case in which the court, having jurisdiction of the parties and of the subject matter, and being fully advised in the premises, exercised its judgment and discretion, and made an award of monthly payments, which were to cease, so far as the wife and her estate were concerned, at her death. Any part of the award paid to Maria, and not consumed at the date of her death, and any monthly payment or payments due according to the provisions of the award, but not yet paid at the date of her death—such as the sum of $475 which has been mentioned—belong to her estate; but she had no interest, and her executor had no interest, in any part of the award payable after January 6, 1912, the date of her death, because the decree itself cut off alimony to her on the occurrence of that event.

It is said that it is the duty of the court to determine, from the circumstances as they existed at the date of the decree, what part of the award was personal to Maria as her alimony, and what part was for support of the children; the court could not give it all to her, nor all to the children; and when her individual share is determined, it belongs to her. The court had power to give to Maria, or to withhold, and to give to the children, or to withhold, as seemed wisest and best. In this instance the court made an apportionment. It gave Maria $75 per month, to be expended as she saw fit for herself and children, until her death. The remainder of the award was then made payable to the children. It is quite idle to contend that this court now has power to revise the terms of the award, which became final and conclusive when the time elapsed within which Maria Chumos might have appealed.

Referring to the power of the court to change an award of alimony, once made, the brief of the executor cites the cases holding that an original award may not be increased or diminished on subsequent application, because of changed conditions or circumstances. The cases are sound, but have no bearing on this controversy. The original award may be of payments to cease in one year, or five years, or on remarriage, or at death. In this instance they were to cease at death. There was no modification of the award while Maria lived. At her death her interest ceased entirely, and what the court does with the remainder is of no concern whatever to her executor.

On this branch ^f the case the brief of the executor concludes as follows:

"Finally, on this proposition, this court as its latest expression, in exactly just such a case, where the relief asked was the same, where the judgment was an alimony award, where such award was to be paid in installments, where, like this, it was to be paid in full of all claims on the husband's property, when the wife died before the last installment became due, this court held that the judgment (for alimony) was final and conclusive; and this decision should be conclusive of this part of the controversy. (*Bassett v. Waters*, 103 Kan. 853, 176 Pac. 663.)"

The Bassett case is identical with this one in the particulars enumerated. It is not identical with this one in two material respects: right to modify the award was not reserved, and payments were not to cease at the wife's death. In the opinion in the Bassett case the court said:

"The nature and effect of the judgment must be determined from its terms. The court had power to decree alimony to the wife in the form of support payable periodically, which would be subject to modification on account of changed circumstances, or to award her permanent alimony in the form of a final judgment enforceable as an ordinary judgment at law." (p. 854.)

In this instance, the provision of the divorce decree, discontinuing payments at death of Maria, was as binding on her, and is as binding on her executor, as the provision requiring payments to be made. Because the executor has no interest in monthly payments provided for by the decree, accruing to the children after Maria's death, he is not authorized to complain of the order relieving Constantine, who is now custodian and guardian of the children, from making them.

Two contentions are made respecting the portion of the appeal relating to the title to the certificate of deposit: first, the court was without authority to hear the motion of Constantine Chumos as guardian; and second, he was not qualified to present the motion.

The finding in the divorce decree, that the certificate of deposit belonged to Maria, did not bind the children. They were not parties to the suit. They subsequently came into court, by motion of their guardian, substantially as interveners, and established their title to the certificate, precisely as a stranger might have done. The fact that it was the defendant in the action who had become guardian was of no consequence. His

status was the same as the status of Angeline Lambros would have been had she been guardian and had she intervened on behalf of the children.

Passing to the second contention, it may be noted preliminarily that, in absence of pleading and proof to the contrary, the law of Pennsylvania is assumed to be the same as the law of this state.

The divorce and the removal of Maria to Pennsylvania did not destroy the common relation of herself and Constantine as parents to their children, and her death did not destroy the relation of Constantine as parent to the children. On the death of Maria, natural guardianship of the child Panagiota devolved on Constantine. (Gen. Stat. 1915, § 5041.) Likewise the domicile of Constantine became the domicile of Panagiota and the probate court of Shawnee county had jurisdiction to appoint him guardian, although the child was out of the state. (*Modern Woodmen v. Hester*, 66 Kan. 129, 71 Pac. 279.) The designation of Angeline Lambros as guardian in the will of Maria was of no legal effect whatever, Maria not being surviving parent. (Gen. Stat. 1915, § 5042.) Angeline Lambros did not attempt to qualify under the void appointment. She is merely brought forward as a stalking-horse by the executor, and the court had jurisdiction to adjudicate the question of guardianship in the proceeding to try title to the certificate of deposit. (*Modern Woodmen v. Hester*, supra.)

In the brief of the executor it is said the order formally transferring custody of the children to Constantine after Maria's death was invalid because made before the action was revived. The continuing jurisdiction of the court to supervise custody of the children did not abate with Maria's death. On the other hand, exercise of the jurisdiction was challenged by that event. It was not necessary that the executor, whose sole interest was financial, should be a party on the record to enable the court to look after the children. If he had been a party, the court would not have listened to him on the subject, because he had no interest in it, and if the order be void, he has no standing to raise the question. He is interested in nothing but assets of the estate of Maria Chumos.

The judgment of the district court is affirmed.