No. 20,002.

*In re* CORNELIA V. H. McCOUN, *Petitioner.*

SYLLABUS BY THE COURT.

1. MINOR CHILDREN— *Domicile with Parents—Jurisdiction of Probate Court.* Ordinarily the domicile of a child is the domicile of a parent, and where a father, the surviving parent who had the custody and control of his children, dies, the probate court of his domicile at the time of his death has jurisdiction to appoint a guardian for his minor children.

2. WILL—*Parent May Designate in Will Guardian for Minor Children.* Under the statute a surviving parent may, in his last will, designate and appoint a guardian for his minor children, and herein it is held that the guardian designated in the last will of the father of the minor children is vested with the same powers and required to perform the same duties as natural guardians exercise and perform.

3. SAME—*Guardian Designated Should be Appointed if Fit and Proper Person.* However appointed, it is competent for the court to inquire whether the guardian is a fit and proper person to execute the trust, and in such an inquiry the paramount consideration is the welfare of the children. Upon this inquiry it is held that the testamentary guardian, whose appointment was confirmed by the probate court of the domicile of the father of the minor children, is not shown by the testimony to be an unfit or improper person to have the care and custody of the minor children.

Original proceeding in habeas corpus. Opinion filed July 10, 1915. Writ allowed.

*Hugh T. Fisher, M. O. Lock,* and *J. B. Larimer,* all of Topeka, for the petitioner.

*Fred J. Evans,* of Garden City, *Lee Monroe, James A. McClure,* and *C. M. Monroe,* all of Topeka, for the respondents.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this proceeding the petitioner, Cornelia V. H. McCoun, seeks to·secure the custody of Charles Edmonds and Anna Harriet Sparling, the two infant children of Earl J. and Harriet E. Sparling, deceased.

From the agreed facts it appears that Earl J. Sparling and Harriet E. Hueberer were married in July, 1911, at Garden City. Shortly afterwards they removed to Denver, Colo., and lived there about fifteen months, and while there, and on March

17, 1912, Charles Edmonds Sparling was born to them. In the fall of 1912 they returned to Garden City and lived for a few weeks with his parents, Robert J. and Carrie E. Sparling. About December 1, 1912, they moved to another house and lived there until the birth of their twins, Anna Harriet and Robert V., on February 14, 1913, and up to the death of the mother, Harriet E. Sparling, on March 14, 1913. Earl J. Sparling took his wife's body to Somerville, N. J., for burial and then went to New York city where he remained until January, 1914, the three children being left meanwhile in the custody of his parents, the respondents. In January, 1914, Earl J. Sparling came to Topeka and soon engaged in business there, which he carried on until the time of his death on January 28, 1915. About February 1, 1914, he sent for his children, and the respondents then moved to Topeka, bringing the three children with them, but on June 26, 1914, Robert V., one of the twins, died. The respondents lived there until about September 1, 1914, part of the time with Earl, when they went back to Garden City and were permitted to take with them the two living children who have since remained in their care. Earl J. Sparling, it appears, paid his parents approximately $779 for the maintenance of his children. It also appears that the petitioner, the sister of his deceased wife, loaned him money from time to time to be used in his business, amounting to about $5000. Earl J. Sparling obtained insurance on his life with one company for $3000 in which his three children were named as beneficiaries. He obtained insurance in another company for $2000 in favor of the two children then living, and later obtained a policy in another company which provided for a sick and accident benefit in favor of his two children, but the benefit under that policy only amounted to $15 and that has been paid. It further appears that on January 25, 1915, three days before his death, Earl J. Sparling executed his last will and testament, wherein he bequeathed all of his property, save $50 each to his children, to Cornelia V. H. McCoun, his sister-in-law, and also named her as sole executrix of his estate. In his will he requested that she be appointed guardian and given the care, custody and control of his children. This will was filed in the probate court of Shawnee county on January 30, 1915, and was duly probated on February 3, 1915, and on February 16, 1915, the court appointed Cornelia V. H. McCoun

as guardian of the persons of Charles Edmonds and Anna Harriet Sparling, and The Prudential Trust Company as guardian of their estate. Prior to the burial of his son, and on January 30, 1915, Robert J. Sparling presented an application to the probate court of Finney county for an appointment as guardian, and on that day he was appointed as guardian of the persons and estate of the children. On February 17, 1915, the respondents refused to surrender the children of Earl J. Sparling to the petitioner on her demand, and she seeks to obtain their custody in this proceeding.

The first question presented for determination is, Which one of the probate courts that assumed to act had the authority to appoint a guardian? It is settled that the probate court of the domicile of minor children possesses the jurisdiction to appoint a guardian for them. (*Modern Woodmen v. Hester,* 66 Kan. 129, 71 Pac. 279; *Connell v. Moore,* 70 Kan. 88, 78 Pac. 164, 109 Am. St. Rep. 408.)

The next inquiry is as to the domicile of the minor children. They could not select a domicile for themselves, nor could the fact that they were temporarily outside of the domicile of their father at the time of his death affect the question. Clearly the domicile of the father fixed the domicile of his minor children. In *Modern Woodmen v. Hester,* supra, it was said:

"During his lifetime the domicile of the father established the domicile of his children. Had they resided apart from him their domicile would not have been changed, and could not have been changed, from his own, except for faithlessness to the parental relation under such circumstances as to indicate a total renunciation of his duty and authority. Upon the death of the father the domicile of the mother fixed that of the children." (p. 133.)

Here the domicile of the father, the surviving parent, was undoubtedly in Shawnee county, the jurisdiction in which the petitioner was appointed. He established a residence in Topeka in January, 1914, and resided and exercised the rights of citizenship there until his death. The father might by consenting to an adoption or by taking other steps to change the legal domicile of the children have effected a change, but the proof satisfactorily shows that he had no purpose of surrendering the control and custody of the children but did intend to have them returned to his immediate care as soon as he could make suitable provision for them. His parents were

*In re* McCoun.

entrusted with the care of the children, but it was a temporary arrangement, and the testimony is to the effect that, for certain reasons, he did not desire them to remain with his parents a great length of time. It also appears that he paid his parents regularly for the care they gave his children. It must be held then that the domicile of the children was in Topeka and that the probate court of Shawnee county was the one that had the jurisdiction and authority to make the appointment of a guardian. However, the matter of the appointment of a guardian in this instance appears to be controlled by a provision of statute on the subject of guardianship. As we have seen, the father, who had the sole control of his children, provided for the appointment of a testamentary guardian in his will. The statute provides:

"The father and mother are the natural guardians of the persons of their minor children. If either dies, or is incapable of acting, the natural guardianship devolves upon the other.

"The survivor may, by last will, appoint a guardian for any of the children, whether born at the time of making the will or afterward, to continue during the minority of the child, or for a less time; and every such testamentary guardian shall have the same power and shall perform the same duties with regard to the person and the estate of the ward, as natural guardians, subject to the provisions of the will. If without such will both parents be dead or disqualified to act as guardian, the probate court may appoint one." (Gen. Stat. 1909, §§ 3966, 3967.)

In his will Earl J. Sparling, the survivor, appointed the petitioner as guardian for his children, which appointment has been confirmed by the probate court, and under the statute quoted it follows that she has the same power and is charged with the same duties toward the children as a natural guardian. Her powers, rights and duties as to the care, control and custody of the children are substantially like those of their father in his lifetime.

The question remains, however, whether the testamentary guardian, who has the technical legal right to the custody of the children, is a fit person to be entrusted with their care, culture and education. She was deemed to be a fit and proper person by the father, who selected her as guardian, and the probate court, which had jurisdiction to inquire into her fitness and make an appointment, has determined that the children might be safely entrusted to her care. It is true, as the respondents contend, that the validity of the appointment and

her technical legal right as testamentary guardian do not conclude the inquiry. It has been determined that in controversies over the custody of children the paramount consideration is their welfare, and hence children have been taken from one parent and given to another, and in some instances have been taken from both parents and given to strangers. (*In re Bort, Petitioner, &c.,* 25 Kan. 308, 37 Am. Rep. 255; *Chapsky v. Wood,* 26 Kan. 650, 40 Am. Rep. 321; *In re Bullen, Petitioner, &c.,* 28 Kan. 781; *In re Beckwith, Petitioner,* 43 Kan. 159, 23 Pac. 164; *Pinney v. Sulzen,* 91 Kan. 407, 137 Pac. 987.) The technical legal right is in the petitioner and the law clothes her with the power and rights which the father possessed, and she is entitled to their custody unless it can be said from the evidence that her condition, habits, temperament and character render her unfit for the trust confided in her. It is said that she is lacking in affection for the children and has exhibited much more affection for Earl J. Sparling than she has for his children. She may not have been as demonstrative as some in her expressions of interest in and love for them, but the effort of respondents to show that she is cold or without the ordinary impulses of mankind—a love for children— was a failure. The minors are the children of a sister to whom the petitioner was greatly devoted, and naturally she has more than an ordinary interest in and affection for them. She testified that she took up her residence in Topeka in order to be near to them, and that she had made a will making them the beneficiaries of her estate.

In order to prevent her from gaining the custody of the children an attempt has been made to show that she is immoral and had been guilty of misconduct with the father of the children. This is met by the evidence of disinterested witnesses who had an opportunity to judge of her habits and character, which tends to show that the attacks on her character have not been sustained. The court would hardly be warranted in setting out at length the testimony offered in support of the charges or in discussing the probabilities and improbabilities in it, but it can be said that the court is not satisfied that the charges of immorality have any substantial foundation. Among other things it was shown that she was separated from her husband and had been living with her father for some time, but it was not shown that the separation

was due to any misconduct or wrong on the part of the petitioner.

The respondents appear to have taken good care of the children while they have had charge of them, and naturally have more interest in them than if they were the children of a stranger. Mrs. Sparling testified that the mother of the children expressed a wish that Mrs. Sparling should take care of them, but this is one of the disputed matters in the case. It appears that the respondents do not own a home, and have little income beyond a pension, which is paid to Mr. Sparling by the government. He is over sixty-five years of age, and hence there is little prospect that he will acquire a great deal of property or that his ability to provide for the children will be much better than it is at the present time. It has been satisfactorily shown that Earl J. Sparling did not wish nor deem it to be wise or prudent to give the respondents the permanent custody of his children or to leave them with the respondents for a considerable length of time. One of his reasons for this view, it appears, was the hostility of Mrs. Sparling towards his wife, the mother of his children, and on account of the imputations which she had made against the character of his wife. In the last hours of his life, and when he realized that the end was near, he decided that the welfare of his children would be best subserved by giving them into the care and custody of the petitioner. The appointment has been legally made, and the court is unable to say, upon the testimony presented, that she is not a fit or proper person to execute the important trust that has been confided to her. The court, of course, retains supervision over the minor children as well as the guardian, and in the future may make any further orders that circumstances or changed conditions may require.

The judgment of the court is that the custody of Charles Edmonds Sparling and Anna Harriet Sparling is awarded to the petitioner, Cornelia V. H. McCoun.