No. 36,635

Ed Paronto, Blanch Paronto and Bessie Cooner, *Plaintiffs*, v. Donald Armstrong and Ruby Armstrong, *Defendants.*

(171 P. 2d 299)

Opinion filed August 7, 1946.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark,* of Salina, was on the briefs for the plaintiffs.

*Harold W. McCombs,* of Russell, argued the cause, and *Floyd L. Kirkman,* of Russell, was associated with him for the defendants.

The opinion of the court was delivered by

HARVEY, C. J.: This is an original proceeding in habeas corpus, for the custody of James Francis Paronto, whose parents are deceased. The following facts are either stipulated or are not controverted.

The plaintiffs, Ed Paronto and Blanch Paronto, are the parents of Francis H. Paronto, and reside in Salina, Kan. The plaintiff, Bessie Cooner, is the mother of Hazel Dell Paronto and resides at Spur, Tex. Hazel's father, Joe Betts, died in December, 1918, when she was about one year old. In 1925, her mother married Tom Cooner, with whom she lives.

Francis H. Paronto and Hazel Dell Betts were married in 1942. On April 23, 1943, James Francis Paronto, the only child of that marriage, was born in a hospital at Lubbock, Tex. Francis H. Paronto lost his life July 12, 1943, in a bombing mission over New Guinea. At that time he was a second lieutenant in the U. S. Army Air Forces and co-pilot of a B-24 bombing plane. He was awarded the Purple Heart posthumously.

Soon after the birth of James Francis Paronto his mother, Hazel Dell Paronto, took him to the home of her mother, Bessie Cooner, at Spur, Tex., and lived there with her for about seven months. She then left the child with her mother and came to Salina to work in a beauty shop, owned by her mother's brother, Jimmy Boykin, who resides at 1300 Court Place, Salina, Kan. A few months later, Hazel Dell Paronto went to Russell and for about two years prior to her death operated as manager the Boykin Beauty Shop in Russell, owned in partnership with her uncle, Jimmy Boykin. Sometime in 1944, Hazel Dell Paronto brought her son to Russell to live with her in her apartment, but finding this unsatisfactory after a few weeks took him back to Spur, Tex., and left him in the care of her mother, Bessie Cooner. About March 3, 1945, Hazel Dell Paronto employed the defendants, Donald Armstrong and his wife, Ruby Armstrong, to care for and attend to her child, James Francis

Paronto, in the home of defendants near Russell. Hazel Dell Paronto paid the defendants $10 per week for that service and she paid for the child's necessary clothing and medical expenses. James Francis Paronto remained with defendants in their home under that arrangement until his mother's death, except for such time as he spent with his mother on week ends and holidays. Neither of defendants is kin to James Francis Paronto.

On April 2, 1946, Hazel Dell Paronto was fatally injured in an automobile accident and died intestate on that date in Russell, Kan.

By the death of his father and mother, James Francis Paronto has an insurance and government estate in the approximate sum of $14,000 in addition to the property he inherits as the sole heir of his mother, Hazel Dell Paronto, and as an heir of his father, Francis H. Paronto.

On April 4, 1946, defendant, Donald Armstrong, filed in the probate court of Russell county a petition in which he alleged, among other things, that he was the custodian of James Francis Paronto, a minor, whose parents were dead and asked that he be appointed guardian of the person and estate of the minor. On the same day, and without notice to anyone, the court granted the petition and appointed Donald Armstrong as guardian of the person and estate of James Francis Paronto.

On April 6, 1946, Hazel Dell Paronto was buried at the ancestral home at Spur, Tex.

On April 8, 1946, Jimmy Boykin, accompanied by counsel, went to the home of defendants and demanded that they release James Francis Paronto to him and defendants refused to do so. There was further proceeding in the probate court of Russell county, which need not be detailed further than to say that an appeal was taken from the order appointing Donald Armstrong guardian of the person and estate of James Francis Paronto to the district court of Russell county, where that matter is now pending.

On April 15, 1946, this habeas corpus proceeding was filed in this court. The petition set out the pertinent facts above stated and an alternative writ was issued. Defendant moved to quash the writ, upon the grounds: First, that no affidavit had been filed as required by our rules (overlooking the fact that such an affidavit had been filed) ; second, that plaintiffs have no legal right to maintain the action; third, that there was another action pending between the

same parties for the same cause, specifically pleading the probate court proceeding above mentioned; and fourth, that the petition failed to state sufficient facts. The court heard oral argument on the motion and after consideration denied the motion. Defendants filed an answer in which they denied they were holding the child unlawfully, alleged the circumstances under which they took the child and their claim to his possession; also alleged that it is for the best interest of the child that he remain with them, that the plaintiffs are not proper persons to have custody of the child, and renewed the legal questions presented in the motion to quash. Plaintiffs filed a reply taking issue upon the question of what was for the best interest of the child, and which of the parties was best suited to rear him, also as to the status of the parties in relation to the child, and the circumstances pertaining to the probate proceeding, and alleging new matter pertaining thereto. Defendants replied denying the new matter.

The parties stipulated many of the facts, somewhat more in detail but to the same effect as stated early in this opinion, and asked the court to appoint a commissioner to hear the evidence pertaining to issues not covered by the stipulation. Whereupon this court appointed Hon. W. A. Barron of Phillipsburg, a capable, experienced attorney of high repute, as its commissioner to hear such evidence and to make suggested findings of fact and conclusions of law. This has been done. The testimony was taken and transcribed by a certified shorthand reporter. The transcript of the testimony and the findings of the commissioner adverse to defendants and recommending that the custody of the child be awarded to the maternal grandmother, Mrs. Bessie Cooner of Spur, Tex., and that some bank or trust company be named as the guardian of the estate of the child, have been filed with the court. Plaintiffs moved for judgment in their favor upon the commissioner's report, also for an order immediately placing the temporary custody of the child with the plaintiffs, Ed and Blanch Paronto. These motions were heard in open court on July 1, 1946. Counsel for plaintiffs argued and filed a brief in support of the motions. Counsel for the defendants presented an argument in their behalf, but did not file a brief; however, they filed with the commissioner suggested findings of fact and conclusions of law and these have been considered by the court as representing their view of the disposition to be made of this case.

On July 10, 1946, having considered the pleadings, the stipulated facts, the evidence taken by our commissioner, the commissioner's report and the arguments and briefs of counsel the court announced its decision to the effect: First, that defendants have no legal right to the custody of James Francis Paronto, and second, that it is to the best interest of the child that his custody be given to Mrs. Bessie Cooner, and such custody was so awarded, a formal opinion to be written later. To carry this decision into effect the court appointed D. K. Fitch of Salina as its marshal with directions to receive the child from the defendants and deliver him to plaintiffs, Ed and Blanch Paronto, at Salina, to be by them delivered to the permanent custodian, Bessie Cooner, at Spur, Tex. ·The marshal's return shows the directions to him have been carried out.

We turn now to the legal questions raised in defendants' motion to quash and in their answer. Defendants alleged that plaintiffs have no legal authority to maintain this action, the argument being that they have no legal duty to care for and support their grandchild. The point is of no importance here. It is true that the use of habeas corpus originally was confined to those who had some legal right to maintain it, or on behalf of some illegal restraint of his liberty, but the use of habeas corpus has been broadened to include an inquiry as to the custody of minor children by a court having equity jurisdiction where two or more parties or groups of parties contend for such custody. See 39 C. J. S. 568 *et seq.*, 29 C. J. 108 *et seq.*, 25 Am. Jur. 202 *et seq.*, and cases cited. In such use of habeas corpus, the legal rights of the contending parties are of no consequence or at most are of but little consequence. The primary and controlling question in such a case always is the present and future welfare of the child. Legal questions presented are considered only as they bear, if at all, upon the question of what disposition of the child is for the child's best interest and this is determined by the court upon all the facts and circumstances disclosed by the evidence. See *Jones v. Jones*, 155 Kan. 213, 124 P. 2d 457, and cases cited on page 219.

In this state the point was set at rest more than 60 years ago by the opinion of Mr. Justice Brewer in the case *In re Bullen, Petitioner*, 28 Kan. 781. There one Joseph Bullen filed a petition to have the custody of Emily C. Evans taken from St. Mary's Female Academy in Leavenworth, to be placed under the care and guardianship of her grandmother, Catherine Anne Evans of London, England. Able

lawyers appeared but no one questioned Bullen's right to file the petition. Respondent made the claim "that the grandmother has no legal right to the custody of the child." With respect to that the court said:

"Clearly the grandmother has no right to the child; there is on her part no legal obligation to support it, and therefore no legal right to its custody. It cannot be said that the child is illegally restrained of its liberty, deliverence from which, as counsel well say, was in the first instance the purpose and object of *habeas corpus*. Yet, as to children at least, the scope of the writ has been largely extended. Beyond the mere matter of forcible restraint, of technically illegal confinement, the courts will inquire whether the surroundings of the child are such as make for its highest welfare, and will do for it that which such welfare compels." (p. 785.)

The rule there announced has been adhered to consistently by this court, not only in habeas corpus cases (*In re Beckwith,* 43 Kan. 159, 161, 23 Pac. 164; *In re Hickey,* 85 Kan. 556, 558, 118 Pac. 56; *In re McCoun,* 96 Kan. 314, 318, 150 Pac. 516) but in other cases involving custody of children (*Coats v. Coats,* 161 Kan. 307, 167 P. 2d 290; *Buchanan v. Buchanan,* 93 Kan. 613, 144 Pac. 840). These lists are not intended to be complete. It accords with the general rule (39 C. J. S.; 29 C. J.; 25 Am. Jur., *supra,* and the many cases there cited).

There is an additional reason for holding that plaintiffs may maintain this proceeding. Plaintiffs are the next of kin to James Francis Paronto. Though there was some authority to the contrary, it is now well settled that under the common law, guardianship by nature of the person of children was vested in the father and in the event of his death in the mother, and in the event of the death of both parents in the next of kin. See 28 C. J. 1059, 1060; 39 C. J. S. 10; 25 Am. Jur. 10 *et seq.; Lamar v. Micou,* 114 U. S. 218, 5 S. Ct. 857, 29 L. Ed. 94, and cases cited in Rose's Notes and Supplement thereto. In this state, by our constitution, article 15, section 6, and by our statute, G. S. 1945 Supp. 59-1802, the rights of the father and mother are made equal. We have no statute which denies common-law rights of guardianship to the next of kin when both parents are deceased. Under G. S. 1935, 77-109, the rule of the common law as applied to next of kin remains in force in this state, unless we should say it is not suitable to the conditions and wants of our people. We would not be justified in so holding where, as here, the next of kin are able and willing to assume the care of the child and promptly took appropriate steps to do so. Since each of the plaintiffs is next

of kin to the child in question, each or all had the right to maintain this action.

Defendants' pleaded that Donald Armstrong is the duly qualified and acting guardian of the person and estate of James Francis Paronto and that there was another action pending in the district court of Russell county. Certified copies of the record of these proceedings were introduced in evidence. In the petition filed by Donald Armstrong he alleged that he was "custodian" of the child. The petition was promptly allowed and an order made purporting to appoint Donald Armstrong as guardian of the person and estate of the child without notice to any one. It does not appear that the child even was in court and no guardian *ad litem* was appointed for him. The pertinent portion of our statute pertaining to notice for the hearing of a petition for guardianship reads:

"If a petition for guardianship is made by the person for whom guardian is sought, or by a parent, custodian, or testamentary guardian, the court may hear the same with or without notice. In all other cases, personal service shall be made upon the ward in such manner and for such period of time as the court shall direct. If he has a spouse, custodian, testamentary or natural guardian, notice shall be given to such persons and to such of the nearest kindred and in such manner as the court may direct . . ." (G. S. 1945 Supp. 59-2259.)

We think Donald Armstrong was not the custodian of this child within the meaning of that statute. It is stipulated that Armstrong and his wife were employed by the mother of the child to care for him. Though they had possession of him while caring for him his mother was his custodian. Defendants were simply the employed agents of the custodian for the care of the child. This agency ceased with the mother's death.

The word "custodian" as used in the quoted statute (and in G. S. 1945 Supp. 59-2257) means a legal custodian; one with authority tantamount to that of a parent or a testamentary guardian; one who had been appointed custodian by a competent court in a proper action or proceeding, for example, such a custodian as the district court might appoint in a divorce case, or a proper court might appoint in a habeas corpus proceeding, or a juvenile court might appoint in a proper proceeding; the suggested order having been made upon proper notice and after a hearing. Certainly it does not mean one who has possession of a child as a caretaker for hire. In this case there were next of kin able, willing and legally competent to assume the care or to make further arrangements for the

possession and care of the child. Under the quoted statute service should have been made upon the ward. A guardian *ad litem* should have been appointed for him, G. S. 1945 Supp. 59-2205, and notice should have been given to his nearest kindred. The probate code was constructed upon the plan of adversary, as distinct from *ex parte* procedure. Parties substantially affected by probate court rulings are entitled to be heard. Notice and an opportunity to be heard are essential to due process of law. We have not hesitated to strike an *ex parte* order made by a probate court which substantially affected the rights of a party. Here the care, support and education of a child three years of age, during his minority, as well as the care of his substantial fortune, were involved; also involved were the rights of the nearest kindred to the custody, care and education of the child. All of these were ignored by the *ex parte* order of the court appointing Donald Armstrong as guardian of the person and estate of the child. We regard the order as void.

The testimony pertaining to the appointment of Donald Armstrong as guardian of James Francis Paronto was to this effect. Hazel Dell Paronto was fatally injured in an automobile accident about 7:00 o'clock the evening of April 2, and died later that night at a hospital in Russell. The evening of April 2, Jimmy Boykin attended a dinner held by a civic group at Great Bend, and about midnight he learned of the accident and injury of Hazel Dell Paronto. He drove to Russell, reaching there in about an hour, and stayed until about 3:00 o'clock the next day. While there he arranged with an undertaker to have the body of Hazel Dell Paronto taken care of. He also appointed Mrs. Opal Richards, an employee of the Beauty Shop at Russell, as manager. The morning of April 3, defendants came to see Boykin at Russell. They first talked of the tragedy. Defendants then asked, "What are you going to do with Jimmy?" Boykin replied, "Well, that is entirely up to the grandparents." He placed a telephone call and told defendants that until he heard from the folks he did not know whether the funeral would be in Russell or Texas. Mr. Armstrong said the child had tonsilitis and some other ailments and gained Boykin's consent to leave the child there and to get him when he came back from Salina, on the way to Texas, if the funeral was to be held there. Mr. Armstrong said he would do anything Boykin wanted him to do; that if it was necessary he would take the child to Salina. Their understanding was that Boykin would go to Salina, contact

the grandparents and make the necessary arrangements for the funeral and advise Armstrong, who would coöperate with him. Armstrong said he had no telephone and for Boykin to locate him through the men at the shop. Boykin went to Salina, contacted the grandparents, and early the next morning received a telegram from Mrs. Cooner that she desired the funeral and burial to be at Spur, Tex., and that she wanted the child. Boykin called Mrs. Richards and asked her to see Mr. Armstrong and tell him the funeral was to be at Spur, Tex., that Mrs. Cooner wanted the child brought down there, and to pack his clothes and bring the child to Salina, or if Armstrong preferred, Boykin would meet him about half way between Russell and Salina, and to ask Armstrong to call when he started. Mrs. Richards located Mr. Armstrong about 11:00 o'clock the morning of April 4, and delivered Boykin's message to him. Armstrong made no comment. About 3:00 o'clock the afternoon of that day, Mr. Armstrong called Boykin by telephone from Russell, and said, "I have some bad news for you." Boykin asked "What has happened?" Armstrong replied, "Well, I have just been appointed guardian and administrator (or guardian) over Jimmy's estate." Boykin asked, "What are you trying to do." Armstrong replied, "Well, I will tell you when I get to Texas, I am leaving tomorrow for Texas." He did not show up in Texas.

The above recital of testimony is taken from that of Jimmy Boykin, and is substantially uncontradicted except Mr. Armstrong specifically denied that he agreed to take the child to Salina, but on that point Ruby Armstrong testified, "We were supposed to take him to Salina." Mr. Armstrong testified that after his talk with Boykin the morning of April 3, "I made up my mind he wasn't going to take that boy away down to Texas." He makes no claim that he told this to Boykin. The record clearly indicates that he did not.

The result is the pleaded appointment of Donald Armstrong, as guardian of the person and estate of James Francis Paronto, is not only void as a matter of law, but, so far as Donald Armstrong is concerned, was applied for and obtained by him under circumstances which do no credit to his honor or to his integrity. It is no defense in this action.

We pass now to the principal question of fact, controverted by the pleadings, upon which our commissioner took the evidence and

made suggested findings of fact and conclusions of law. The question is what is the best for the present and future interest of James Francis Paronto? Stated more specifically, is it to his best interest that his custody be awarded to the defendants, Donald and Ruby Armstrong, or to the child's paternal grandparents, Ed and Blanch Paronto, or to his maternal grandmother, Mrs. Bessie Cooner. Our commissioner recommended that the child be placed in the custody of Mrs. Cooner.

In actions filed originally in this court, in which a commissioner is appointed to hear the evidence and make findings of fact and of law, such findings are advisory to the court, rather than conclusive upon it. The court has the duty to examine the evidence and to consider the same, together with the pleadings, stipulations, exhibits and arguments of counsel and reach its own conclusions upon the facts, as well as the applicable law. The court has done this and has reached the same conclusion as our commissioner.

In addition to what has been said we summarize the testimony as it pertains to the parties.

Donald and Ruby Armstrong do not own a home. He is employed as a pumper on an oil lease, operated by the Sohio Petroleum Company, about nine miles southwest of Russell. They live on the lease in one part of a small duplex, owned by his employer for which they pay a nominal rent. His salary, computed by the hour, amounts to about $250 per month. His hours of work give him spare time which he uses to buy, repair and sell used oil-field equipment, from which he has a varied income. He testified that he has about $12,000 invested in U. S. bonds and postal savings, two automobiles of the value of about $1,500, some used oil-field equipment, that he carries a substantial amount of insurance, and usually has a bank account of a few hundred dollars. He owns no real property. There was testimony that he has a good credit rating. He is 39 years old, has worked in various capacities in different oil fields of Kansas and of several other states, and, on at least one occasion, operated a garage for a few months. He has been working in his present position for about three years, and is the next to the lowest paid employee on the lease. He was discharged by his last previous oil company employer and has no assurance how long his present job will last.

Donald Armstrong is living with his third wife. His first wife died in 1929, in childbirth. The child, a boy now 17 years of age,

has never been furnished a home by his father; his sister has reared the boy. He married a second time, date not shown, but apparently he and his wife lived together several years. They had no children, and he did not bring his son into his home. They separated in May, 1940. She appears to have been living in New Mexico or to have gone there. Some time in 1941, she brought an action at Las Vegas, N. M., against her husband for divorce. He signed a necessary waiver. She obtained a decree of divorce from her husband. In this case he testified that the decree "became final in July '41 or '42, I forget which it was." He was married to his present wife June 12, 1942. No children have been born to them, he has not brought his son into his home.

Ruby Armstrong, 34 years of age, is living with her second husband. In 1928, when 16 years of age, she married Edwin H. O'Brien. Their only child, Edwin H. O'Brien, Jr., was born in 1935. In June, 1940, she and her husband separated. She worked for a dollar a day at Newton as a cook in a large restaurant, then for some time as housekeeper in a motherless home near Newton, where there were nine children, then at Emporia. In August, 1941, she filed at Emporia, a suit for divorce against her husband. He filed an answer, denying grounds of divorce in her petition, and by cross petition alleged grounds of divorce against her. Each party asked for the custody of the child. When the case was called for trial plaintiff did not appear; her attorney stated that no evidence would be offered in her behalf. Defendant offered evidence in support of his cross petition. The trial court found the allegations of the cross petition to be true, granted defendant a divorce, and awarded him the custody of their child and in doing so stated specifically "that plaintiff is not a fit and proper person to have the care, custody, or control of the minor child." The specific reason for that finding appearing in the record, need not be stated. After defendants were married they lived in Russell until the spring of 1943, when they moved upon the lease where they now live. They have made no effective effort to make a home for their own children. Their testimony does not disclose that either is affiliated with any religious organization, or that either had an education beyond the common school, if indeed they finished there.

However, defendants did give the child good care while he was in their possession. He is a bright, active child. They grew fond of him, wanted to adopt him, but the mother declined, and although

the mother was generous in providing for him, they spent their own money for additional things which added to his pleasure or comfort.

Defendants are of no kin to the child. Their relation to him was only that of caretakers. The fiasco of attempting to be appointed as the guardian of his person and estate was futile. They are unstable as to their home, no one knows where they are likely to be in a few months or a few years; unstable in their domestic relations, and have shown a disposition to take unfair advantage of those whose rights and obligations to the child are superior to their own. More might be said upon the record before us, but we see no purpose in doing so. We decline to give the custody of the child to defendants.

We shall now consider to whom the custody of the child should be given as between the plaintiffs.

Ed Paronto, 55 years of age, and Blanch Paronto, 51, paternal grandparents of James Francis Paronto, have been married more than 25 years. They have reared five children, four of whom are living, the youngest, a daughter 16 years of age, lives at home. A grown daughter works and lives at home. They gave each of the children a good Christian home and a high-school education. They live in a good five-room cottage, purchased on a contract which is almost paid out. Mr. Paronto works for a packing company at $200 per month. They are able and willing to give their grandson a pleasant, happy and respectable home, and they are fit and proper persons to do so. However, they had little opportunity for personal acquaintance with James Francis Paronto, prior to the death of his mother.

Mrs. Bessie Cooner, 48 years of age, is the maternal grandmother of James Francis Paronto. She and her present husband, Tom Cooner, 65, have been married since May 8, 1925. They are the parents of one son, Warren Cooner, 20 years of age and in the merchant marine service. He has finished high school and plans to go to college. Bessie and Tom Cooner have been excellent parents. They attend church regularly. They own their home and truck farm, free of debt. It provides them a comfortable living. Mrs. Cooner's parents, still active and in good health, and a married brother and his family, live in the same vicinity. Mrs. Cooner cared for James Francis Paronto almost entirely for nearly the first two years of his life, and has a strong attachment for him. She is of good moral character, is able, ready and willing to assume the

obligation of the care, custody, control and possession of James Francis Paronto, the only child of her only daughter, and provide the child a happy, respectable home with proper care and training. She is the one person who can give this child the love, care and attention nearest to that which could be given by a mother. We are confident she will do so.

It is the judgment of the court that the custody of James Francis Paronto be and the same is hereby awarded to and vested in his maternal grandmother, Mrs. Bessie Cooner, of Spur, Tex.

It is the further judgment of the court that the cost of this proceeding, including any claim the defendants have or may have for the care and maintenance of James Francis Paronto, since the death of his mother, be and the same is hereby taxed to the defendants.