No. 46,850

In the Interest of NICHOLS JOHNSON, ROBERT JOHNSON, JR., and RHONDA JOHNSON, Minor Children. (LOUISE SCHAFER, *Appellant,* v. CAROL MESIGH, Probation Counselor, and TOM VALENTINE, Guardian *ad litem, Appellees.*)

(504 P. 2d 217)

Opinion filed December 9, 1972.

*Roger L. McCollister,* of the Legal Aid Society of Topeka, Inc., argued the cause and was on the brief for the appellant.

*Tom Valentine,* guardian *ad litem,* of Topeka, argued the cause, and *Carl R. Pearson,* Assistant County Attorney, was with him on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This case originated in the juvenile court of Shawnee County in proceedings in which (three children) Nicholas Johnson, Robert Johnson, Jr., and Rhonda Johnson were found to be dependent and neglected children. The mother of the three children, Joann Schafer Johnson, was killed in an automobile-train accident on September 22, 1971. Their father, Robert Johnson, Sr., who had previously been divorced by Joann and subsequently abandoned the children, had his parental rights severed in the juvenile court proceedings. When the proceedings were initiated the approximate ages of the three children were Nicholas five; Robert, Jr., three and one-half, and Rhonda two.·

The orders of the juvenile court decreeing the children to be dependent and neglected were entered on October 29, 1971. On December 8, 1971, Nicholas and Robert were committed to the care of Carol Mesigh, Probation Counselor for the juvenile court for adoption. Rhonda was committed to the care of the Kansas State Department of Social Welfare. Louise Schafer, the natural grandmother of the three children appealed to the district court which affirmed the orders of disposition of the juvenile court. Mrs. Schafer then perfected this appeal.

The appellant's arguments on appeal center around her claim that the decision on disposition of the district court was against the best interests of the children in the light of the existing bond of love and affection between the children and herself as their grandmother.

When an appeal such as that in this case has been perfected to the district court the pertinent statute K. S. A. 1971 Supp. 38-834 (*c*) governs the proceedings. It provides:

". . . The case shall be heard and disposed of in accordance with the provisions of this act and in the exercise of all the powers and discretion herein given to the juvenile court."

In other words, the district court has the same jurisdiction as the juvenile court and must treat the case *de novo* subject to all the

limitations as to jurisdiction and issues which apply to a juvenile court. (*In re Templeton,* 202 Kan. 89, 447 P. 2d 158.)

In order to acquire the jurisdiction over the custody of a child the juvenile court must first decide that the child is dependent and neglected. (*Murrow v. Powell,* 167 Kan. 283, 205 P. 2d 1193.) In this case the juvenile court did find the three children to be dependent and neglected and this finding is undisputed. The only matter appealed from to the district court and then to this court is the question of disposition of the children.

When a juvenile court makes an order severing the parental rights of the only surviving parent, as was done in this case, the court may, pursuant to the provisions of K. S. A. 1971 Supp. 38-824 (*c*), commit the child to one of the following:

"(1) To the care of some reputable citizen of good moral character;

"(2) to the care of some suitable public or private institution used as a home or place of detention or correction;

"(3) to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for dependent and neglected children;

"(4) to the state department of social welfare."

The commitment orders of the juvenile court, which we have recited, were in compliance with the provisions of the statute.

When this appeal was perfected to the district court Thomas A. Valentine was appointed guardian *ad litem* for the three minor children and has appeared in that capacity in all subsequent proceedings in the district court and in the appeal to this court. The guardian *ad litem* takes the position that the appellant's appeal should be overruled on all points raised and that the disposition be sustained in its present form. The state joins with the guardian *ad litem* in the position taken by him.

The appellant first argues that a grandparent, when next of kin, is a natural guardian under common law and thus entitled to a preference. The common law rule to the effect that guardianship vested in father, mother, and next of kin in that order was first modified by Article 15, Section 6 of the Constitution of the State of Kansas, wherein women were given equal rights with respect to the possession of children. The common law rule was further modified by K. S. A. 59-3014 and its successor K. S. A. 1971 Supp. 59-3014 which provides with respect to priority of a guardian that priority shall be given in the following order:

"(1) To the nominee of a minor over the age of fourteen (14) years who is not himself an incapacitated person.

"(2) To the nominee of a natural guardian. . . ."

Neither condition prevails in this case. The term "natural guardian" is defined in K. S. A. 1971 Supp. 59-3002 (3) as follows:

"(3) The term 'natural guardian' shall mean both the father and mother of a legitimate minor or the mother of an illegitimate minor, provided that both such parents or parent shall not have been found to be an incapacitated person or had their parental rights severed by a court of competent jurisdiction. If either parent of a legitimate minor dies, or has been found to be an incapacitated person or has had his parental rights severed by a court of competent jurisdiction the other shall be the 'natural guardian.' "

Even though grandparents do not fall within the statutory definition of natural guardian, appellant claims that as next of kin she is entitled to preference under the common law rule which should be applied in the instant case. Appellant cites K. S. A. 77-109 and the case of *Paronto v. Armstrong*, 161 Kan. 720, 171 P. 2d 299, in support of her position. While 77-109 provides that common law, as modified, "shall remain in force in aid of the General Statutes of this state;" it further provides:

". . . but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object."

The purpose which underlies our Juvenile Code and the beneficent objectives which it seeks to attain are expressed in K. S. A. 38-801 which reads:

"This act shall be liberally construed, to the end that each child coming within its provisions shall receive such care, custody, guidance, control and discipline, preferably in his own home, as will best serve the child's welfare and the best interests of the state. In no case shall any order, judgment or decree of the juvenile court, in any proceedings under the provisions of this act, be deemed or held to import a criminal act on the part of any child; but all proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state. This section shall not apply to proceedings under section 30 [38-830] of this act."

The mandate of 38-801 directing liberal construction of the code so as to "best serve the child's welfare and the best interests of the state," has received consistent adherence in the decisions of this court. (*Lennon v. State*, 193 Kan. 685, 396 P. 2d 290; and *In re Armentrout*, 207 Kan. 366, 485 P. 2d 183, and cases cited therein.)

The point raised by appellant was settled many years ago in the

case of *In re Bullen*, 28 Kan. (2nd Ed.) * 781, wherein Mr. Justice Brewer speaking for the court said:

".  .  . Clearly the grandmother has no right to the child; there is on her part no legal obligation to support it, and therefore no legal right to its custody. .  .  ." (p. * 785.)

The *Paronto* case, cited by appellant, was an original proceeding in habeas corpus wherein grandparents were awarded custody of a three-year-old child whose parents were deceased. The decision does not rest on any legal right of the grandparents to custody, but was decided on the issue of what was the best interests of the child. The holding in *Paronto* is set out as follows:

"Considering the facts disclosed by the record pertaining to the best interest of the child, it is held that it is to the best interest of the child that he be reared by his maternal grandmother." (Syl. ¶ 5.)

In the *Paronto* case it was pointed out that the maternal grandmother—as next of kin—had the right to maintain the action. The love of the grandmother, as a factor to be recognized in determining the best welfare of the child, was acknowledged by the court in the opinion wherein it was said of the grandmother—

".  .  . She is the one person who can give this child the love, care and attention nearest to that which could be given by a mother. We are confident she will do so." (p. 732.)

In the instant case the trial court's memorandum decision reveals that compassionate consideration was given to the bond of affection that exists between appellant and the three children involved. The court's memorandum reads:

"Perhaps no decision can be submitted to a Court for determination which is more difficult than the one before the Court in this instance. However, the law of Kansas is quite clear that the primary factor for the Judge to consider is what will be to the best interests of the minor children.

"The Court has very carefully considered the assets, and there are many, of the maternal grandmother who with limited education and without the help of a dutiful husband has raised two children to adulthood, losing one tragically, and who still has two teenage children to rear. She has, without adequate financial assistance other than that rendered by the welfare done a commendable job. It is only natural, knowing the bond of affection that exists between her and the small children involved herein, that she would be motivated to have their custody. On the other hand, in light of the fact that she still has two teenage children of her own to rear and being mindful of the condition of her general health, the Court does not feel that it would be to her best interest as well as the best interest of these children for her to assume the additional responsibility. This, the court is of the opinion, would

strain her situation to the breaking point, which in time would be disastrous for all concerned."

The trial court reviewed the evidence and made extensive findings of fact which support its conclusions. It is apparent from the record that the trial court carefully weighed the facts and circumstances surrounding the placement of the children. Pertinent facts concerning Mrs. Schafer's situation were recited by the trial court as follows:

"The maternal grandmother, Mrs. Louise Shafer, is forty-one years of age and has been receiving assistance under an ADC Grant from the County Welfare Department since August 31, 1965. She previously had been married to John Shafer, which marriage was terminated by divorce in 1960. Since that termination John Shafer has in no way supported the children. There were four children born of the marriage between Louise Shafer and John Shafer, the same being John Shafer, Jr., presently of the United States Air Force; Joann Shafer Johnson, born in 1951 who is the mother of the minor children involved herein and who was killed in a train-car collision on September 22, 1971; William Shafer, born in 1956 who is presently fifteen years old and is in the 7th grade at Shawnee Heights Junior High School; Karen Shafer, who was born in 1958 who is attending Shawnee Heights Elementary School. Mrs. Shafer is presently living at 3831 SE Tomahawk Trail with her two children, William and Karen. The home of Mrs. Shafer is adequate. Mrs. Shafer has a very limited education as well as income, the sole source being her welfare payments and assistance from her son in the service. The two children living at home have both been in special education classes and at the present time William is taking a special education class. Mrs. Shafer and her children are not members of any church or Sunday school. Mrs. Shafer has been unable to work due to health problems, the same being a skin condition and extreme nervousness. Mrs. Shafer states that if awarded custody of her grandchildren she would have an additional room built on her house and that this would be done with the assistance of her son who is in the Air Force at this time. For further detail in connection with the maternal grandmother the Court incorporates herein the report of the Shawnee County Welfare Department of October 26, 1971 by Mrs. Kay Corn, Social Worker.

"The Court further incorporates herein by this reference without specifically setting forth same in detail the consultation report of Dr. R. O. Settle, M. D., of the Shawnee County District Court Clinic made on November 16, 1971, wherein he made assessment of Mrs. Shafer setting forth both the positive and negative aspects with regard to Mrs. Shafer having custody herein."

Appellant admits that it is the long established law in this state that the paramount consideration of the court is the welfare and best interests of the child. *Jackson v. Jackson,* 181 Kan. 1, 309 P. 2d 705, and cases cited therein.)

This court has repeatedly taken the position that the trial court is the best judge of the best interests of the child and, therefore,

in the absence of abuse of judicial discretion its judgment will not be disturbed on appeal. (*Jackson v. Jackson,* supra; *Goetz v. Goetz,* 180 Kan. 569, 306 P. 2d 167; and *Travis v. Travis,* 163 Kan. 54, 180 P. 2d 310.)

Appellant has a right to have considered her bond of love with her grandchildren; this, however, is only one of the factors to be considered in determining the disposition of the children in their best interests. The trial court considered this bond together with the other evidence of appellant's health, the responsibility of her own children, and other circumstances surrounding her welfare and home conditions. We find no abuse of discretion in the orders of disposition.

Appellant makes a further point on appeal that as a natural guardian she has an interest in continuing contact, *i. e.,* visitation rights with her grandchildren. In this regard the instant case presents a situation quite different from a simple custody suit. The disposition of the children here is for adoption purposes and has the effect of prohibiting appellant from exercising visitation rights as the children, when adopted, will have new parents and new grandparents. The effect of adoption is set forth in K. S. A. 1971 Supp. 59-2103 in pertinent part as follows:

". . . When adopted said child shall be entitled to the same rights of person and property as a natural child of the person thus adopting the child. The person so adopting such child shall be entitled to exercise all the rights of a natural parent and be subject to all the liabilities of that relation. Upon such adoption all the rights of natural parents to the adopted child, including their right to inherit from such child, shall cease, except the rights of a natural parent who is the spouse of the adopting parent."

Under the statute the adoptive parents are entitled to exercise all of the rights of a natural parent, thus whether a natural grandparent can continue contact with an adopted child is a matter within the discretion of the adoptive parents. This principle may seem harsh in view of the existing love of a grandparent, but the best interests of the child must be the paramount consideration.

Finally, appellant complains because an attorney for prospective adoptive parents was permitted to remain as an observer in the courtroom during the proceedings. The record fails to reveal an objection was lodged on this point. Thus, the question is not before us under the familiar rule that it must be shown that a question raised on appeal was presented to and determined by the trial court in order that it receive consideration on appellate review.

(*Pacific Indemnity Co. v. Berge,* 205 Kan. 755, 473 P. 2d 48; and *Schneider v. Washington National Ins. Co.,* 200 Kan. 380, 437 P. 2d 798.)

K. S. A. 38-822 provides that the juvenile court may exclude all noninterested parties from the courtroom. We have held the authority to exclude under the statute is discretionary. (*Lennon v. State,* supra.) In any event, as we have noted, no motion to exclude was made nor was any objection lodged to the presence of the attorney referred to.

The instant case was carefully and thoroughly tried below. It is apparent that all available evidence which might bear upon the issue was presented by industrious counsel. We join the trial court in expressing compassion for this unfortunate grandmother, but sympathy cannot be allowed to overshadow the best interests of the three children which is the paramount issue to be determined. There is substantial competent evidence to support the findings and judgment of the trial court and the judgment must be affirmed.